IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THE MEDICAL PROTECTIVE COMPANY,   *
                                        *

    Plaintiff,                  *

                                       *

vs.                            * CIVIL ACTION NO. 20-00414-KD-B

                                     *

CRAFTON CHIROPRACTIC, INC.,      *
*et al.*,                              *

                                     *

    Defendants.               *

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' motion to dismiss or stay (Doc. 29). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that the motion be **GRANTED in part** and **DENIED in part**.

### I.    BACKGROUND

This case centers on a professional liability insurance policy issued by Plaintiff, The Medical Protective Company ("MedPro"), to Katherine Crafton and Crafton Chiropractic, Inc. (collectively, the "Craftons"), who are Defendants in this declaratory action. At issue is whether the policy obligates MedPro to defend and indemnify the Craftons in a pending state

court action brought against them in Mobile County Circuit Court by Doug Johnson and Emily Johnson, in her capacity as personal representative of the Estate of Patricia Johnson (collectively, the "Johnsons"). The Johnsons have also been named as Defendants in this action. In addition to seeking a declaration regarding its duty, or lack thereof, to defend and indemnify the Craftons in the underlying action, MedPro seeks a declaration that it is entitled to rescind the policy and disclaim coverage based on alleged material misrepresentations or omissions by the Craftons.

**A.   The Parties.**

MedPro is an insurance company incorporated and having its principal place of business in Indiana. (Doc. 1 at 2).[1] Katherine Crafton ("Dr. Crafton") is a licensed Alabama chiropractor whose practice is incorporated as Crafton Chiropractic, Inc. ("Crafton Chiropractic") and is located in Mobile, Alabama. (Doc. 29-1 at 2). Doug Johnson is a citizen of Alabama and the husband of Patty Johnson, who died of breast cancer in May 2018. (Id.). Emily Johnson, also an Alabama citizen, is Patty Johnson's daughter and the personal representative of her estate. (Doc. 1 at 2; Doc. 29-1 at 2).

---

[1] The Court's citations to the transcript in this report and recommendation refer to the pagination assigned in CM/ECF.

### B.    The Insurance Policy.

MedPro issued Healthcare Professional Professional Liability Policy Number 815125 (the "Policy") to the Craftons for the period December 10, 2018 to December 10, 2019.  (Doc. 1-4).[2]  The Policy provides coverage up to $1,000,000 for each covered "wrongful act, event or personal injury offense."  (Id. at 3).

### C.    The Underlying Lawsuit.

The state court case underlying this declaratory action stems from the Craftons' treatment of Patty Johnson shortly before her death from breast cancer in May 2018.  On January 18, 2019, Doug Johnson filed a lawsuit against the Craftons, styled Doug Johnson v. Crafton Chiropractic, Inc., et al., Case No. 02-CV-2019-900178.00, in the Circuit Court of Mobile County, Alabama (the "Underlying Lawsuit").  (Doc. 1-2).  A first amended complaint was filed on May 4, 2020, adding Emily Johnson, as personal representative of Patty Johnson's estate, as a plaintiff.  (Doc. 1-3).  A second amended complaint was filed on September 8, 2020, and, most recently, the Johnsons filed a third amended complaint on January 20, 2021.  (Docs. 29-1, 29-2).[3]

---

[2] The Policy has a retroactive date of December 10, 2014.  (Doc. 1-4 at 4).

[3] The Johnsons' second and third amended complaints in the Underlying Lawsuit were filed after MedPro filed its complaint for declaratory judgment in this case.  (See Docs. 1, 29-1, 29-2).

In the Underlying Lawsuit, the Johnsons allege that when Patty Johnson was diagnosed with a recurrence of breast cancer in November 2017, she decided to forego traditional chemotherapy and instead sought alternative cancer treatments from the Craftons. (Doc. 29-1 at 1-2, 4-7).  According to the Johnsons, Dr. Crafton told Patty and Doug Johnson that Crafton Chiropractic's "Health Patient Program" included a "cancer protocol" that would cure Patty Johnson's breast cancer, and that she "had a 100% success rate in curing cancer."  (Id. at 4-5).  In reliance on Dr. Crafton's representations, Patty and Doug Johnson paid thousands of dollars for alternative treatments provided at Crafton Chiropractic's clinic and supplements purchased from Crafton Chiropractic.  (Id. at 5-6).  However, none of the treatment modalities or supplements provided by the Craftons have ever been proven to cure or effectively treat cancer, and many have in fact been designated as "fake" cancer cures by regulatory agencies or reputable medical organizations.  (Id. at 7).  The Johnsons allege that Patty Johnson's condition progressively worsened during the three months that she participated in the "cancer protocol," but Dr. Crafton assured them that the treatment was working, and that Patty was simply experiencing a "healing crisis" that was part of the normal process of curing her cancer.  (Id.).  In fact, Patty Johnson's

cancer was rapidly metastasizing, and she ultimately died of breast cancer on May 5, 2018.[4]  (Id. at 7-8).

In their third amended state court complaint, the Johnsons assert eight causes of action against the Craftons: intentional misrepresentation (Count A); reckless misrepresentation (Count B); negligent misrepresentation (Count C); fraudulent suppression (Count D); breach of contract (Count E); breach of warranty (Count F); wrongful death (Count G); and an "Alternative Claim under the Alabama Medical Liability Act" (Count H).[5]  (Id. at 8-13).  MedPro is providing a defense for the Craftons in the Underlying Lawsuit, subject to a full reservation of rights.  (Doc. 1 at 3; Doc. 35 at 4).

**D.    The Present Action.**

MedPro initiated this action on August 19, 2020, by filing a complaint for declaratory relief in this Court.  (Doc. 1). MedPro's complaint seeks a declaratory judgment that MedPro does not owe liability insurance coverage to its insureds, the Craftons, for claims asserted by the Johnsons in the Underlying Lawsuit, and that MedPro be permitted to withdraw from defending the Craftons

---

[4] The Johnsons allege that traditional cancer treatment would have extended Patty Johnson's life by three to ten years.  (Doc. 29-1 at 2).

[5] The Johnsons' causes of action in the Underlying Lawsuit are labeled by letter rather than by number.  (See Docs. 1-2, 1-3, 29-1, 29-2).

in the Underlying Lawsuit. (Id. at 11-12). MedPro's complaint alleges that the Johnsons' claims against the Craftons are outside the scope of the Policy's Professional Liability coverage, and that certain policy exclusions bar or limit coverage. (Id. at 5-9). The complaint also alleges that MedPro is entitled to rescind the Policy and disclaim coverage due to material misrepresentations or omissions made by the Craftons in the policy application. (Id. at 9-10).

After the Johnsons and the Craftons filed their respective answers to MedPro's complaint (Docs. 7, 8, 21), the Defendants jointly filed the instant motion to dismiss or stay. (Doc. 29). In the motion, Defendants argue that, to the extent MedPro seeks a declaratory judgment that it has no duty to indemnify the Craftons, MedPro's claim should be dismissed or stayed because it is not yet ripe and involves issues that should be decided in the Underlying Lawsuit. (Id. at 3-8). Defendants further argue that MedPro's complaint fails to state claims upon which relief may be granted as to MedPro's duty to defend and request for rescission of the Policy. (Id. at 8-18). MedPro filed a response in opposition to the motion (Doc. 35), and Defendants filed a reply. (Doc. 38).

## II.   LEGAL STANDARDS

### A.   Declaratory Judgment Act.

MedPro brings this action pursuant to the Declaratory Judgment Act, which provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a).[6]  The Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).  The Supreme Court has described the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  Id. at 287 (1995) (quotation omitted).  As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam).  "The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." State Auto Ins. Cos. v. Summy, 234 F.3d 131, 136 (3d Cir. 2000). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to

---

[6] MedPro invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship).  (Doc. 1 at 2).

7

stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." <u>Wilton</u>, 515 U.S. at 288.

**B.   Motion for Judgment on the Pleadings.[7]**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." <u>Cannon v. City of W. Palm Beach</u>, 250 F.3d 1299, 1301 (11th Cir. 2001). On a Rule 12(c) motion, "the court considers the complaint, answers, and the exhibits thereto." <u>Barnett v. Baldwin Cnty. Bd. of Educ.</u>, 60 F. Supp. 3d 1216, 1224 (S.D. Ala. 2014).[8]

---

[7] Defendants initially labeled the section of their motion seeking dismissal of MedPro's duty-to-defend and rescission claims due to failure to state a claim upon which relief may be granted as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (<u>See</u> Doc. 29). However, because the motion was filed after all of the Defendants had filed answers, Defendants were permitted to amend their motion to properly reflect that it is a motion for judgment on the pleadings under Rule 12(c). (<u>See</u> Docs. 31, 32).

[8] In deciding a motion for judgment on the pleadings, the Court "may consider any documents attached to the complaint." <u>Barnett</u>, 60 F. Supp. 3d at 1224 (citing Fed. R. Civ. P. 10(c)). The Court may also consider documents attached to an answer or documents attached to the Rule 12(c) motion itself, as long as the documents are central to the claim at issue and their authenticity is undisputed. <u>See</u> <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134-35 (11th Cir. 2002); <u>Perez v. Wells Fargo N.A.</u>, 774 F.3d 1329, 1340 n.12

"When the motion is based on allegations of failure to state a claim upon which relief can be granted, it is evaluated the same as a Rule 12(b)(6) motion to dismiss."[9]  Id.; see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.3 (11th Cir. 2002) ("Whether the court examined Count IV . . . under Rule 12(b)(6) or Rule 12(c), the question was the same: whether the count stated a claim for relief.").  "Thus, the Court considers whether the plaintiff has pled a plausible claim, 'accepting the facts in the complaint as true and viewing them in the light most favorable to the nonmoving party.'"  Sharbaugh v. Beaudry, 267 F. Supp. 3d 1326, 1329 (N.D. Fla. 2017) (citation

_____

(11th Cir. 2014).  In this case, the Policy and the Healthcare Professional Professional Liability Insurance Application are attached as exhibits to MedPro's complaint and are incorporated by reference therein.  (Docs. 1, 1-4, 1-5).  The complaint and first amended complaint in the Underlying Lawsuit are also attached to MedPro's complaint and incorporated by reference.  (Docs. 1, 1-1, 1-2).  Additionally, the second and third amended complaints in the Underlying Lawsuit, which were filed after MedPro's complaint for declaratory judgment, are attached as exhibits to the instant motion.  (Docs. 29, 29-1, 29-2).  The parties do not dispute that the attached Policy and policy application are the ones relevant to this action, nor is there any dispute that the attached state court complaints accurately reflect the claims for which coverage is sought.  Because the Policy, the policy application, and the state court complaints are central to the claims at issue, and their authenticity is undisputed, the Court will consider those documents in deciding Defendants' motion for judgment on the pleadings.  See Nationwide Prop. & Cas. Ins. Co. v. O'Neill, 2013 U.S. Dist. LEXIS 159927, at *2-3, 2013 WL 5972471, at *1 (M.D. Ga. Nov. 8, 2013).

[9] Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted may be raised "by a motion under Rule 12(c)[.]"  Fed. R. Civ. P. 12(h)(2)(B).

omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

    **C.   Governing Law.**

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005).  MedPro seeks a declaratory judgment setting forth the parties' rights and responsibilities under a contract of liability insurance.  "Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991).  "In the context of insurance cases, the court is obliged to apply the laws of the state where the last act is 'receipt and acceptance' of the insurance policy." Am. Motorists Ins. Co. v. S. Sec. Life Ins. Co., 80 F. Supp. 2d 1280,

1282 (M.D. Ala. 2000).  In the instant case, it appears that the last receipt and acceptance of the subject Policy took place in Alabama, where Crafton Chiropractic has its principal place of business.  Indeed, the parties appear to agree that Alabama law applies, as both sides have cited extensively to Alabama cases and statutes.  Therefore, this Court will apply Alabama law in determining the scope of coverage under the Policy and whether rescission is appropriate.

D.  **Duties to Defend and Indemnify.**

"Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify." Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058, 1063 (Ala. 2003).  Of those duties, it is well-settled that an insurer's duty to defend is the more extensive.  Id.

"An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured." Allstate Indem. Co. v. Lewis, 985 F. Supp. 1341, 1344 (M.D. Ala. 1997). "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So. 2d 1006, 1009 (Ala. 2005) (quotation omitted).  If the complaint against the insured alleges a covered

occurrence, the inquiry ends, and "the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered occurrence." Charter Oak Fire Ins. Co. v. City of Fairhope, Ala., 478 F. Supp. 3d 1218, 1225 (S.D. Ala. 2020) (quotation omitted). But where the complaint does not, on its face, allege an injury within the coverage of the policy, the court "may also look to facts which may be proved by admissible evidence." Lewis, 985 F. Supp. at 1345 (quotation omitted). "An insurer owes no duty to defend where there is neither an allegation of a covered occurrence in the complaint nor evidence of one in the litigation itself." Charter Oak, 478 F. Supp. 3d at 1225. "When a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy." Hartford Cas., 928 So. 2d at 1010 (quotation omitted).

"Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial." Guar. Nat. Ins. Co. v. Beeline Stores, Inc., 945 F. Supp. 1510, 1514 (M.D. Ala. 1996). Therefore, "a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory

of liability and assert a claim that is covered by the policy at issue." Id.

Courts must give the terms of an insurance policy "a rational and practical construction." State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 309 (Ala. 1999). A court is not to consider the language of the policy in isolation, but rather must consider "the policy as a whole." Id. "Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion." Lewis, 985 F. Supp. at 1345 (internal citation omitted). "If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." Id. However, "[i]f the insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction." Certain Underwriters at Lloyd's, London v. Kirkland, 69 So. 3d 98, 101 (Ala. 2011) (quotation omitted).

### III. MOTION TO DISMISS OR STAY DUTY-TO-INDEMNIFY CLAIM

In the first section of their motion, Defendants argue that MedPro's claim seeking a declaratory judgment that it has no duty to indemnify the Craftons should be dismissed or stayed because the claim is premature and unripe for adjudication and involves

issues which should be decided in the Underlying Lawsuit.   (Doc. 29 at 3-8).

"[A]n insurer's duty to indemnify its insured depends on 'the facts adduced at the trial of the action,' *i.e.*, the final resolution of the underlying action."   Owners Ins. Co. v. GTR, Inc., 461 F. Supp. 3d 1190, 1197 (M.D. Ala. 2020) (quoting Hartford Cas., 928 So. 2d at 1013).   "For this reason, the Eleventh Circuit has consistently held—albeit in unpublished opinions—that whether an insurer has a duty to indemnify is 'not ripe for adjudication until the underlying lawsuit is resolved.'"   Id. (quoting Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc., 766 F. App'x 768, 770 (11th Cir. 2019) (per curiam); see also Am. Safety Indem. Co. v. T.H. Taylor, Inc., 513 F. App'x 807, 810 n.4 (11th Cir. 2013) (per curiam).

Here, the Underlying Lawsuit is still pending in state court, thus making the issue of MedPro's duty to indemnify the Craftons unripe for adjudication.   "[D]istrict court opinions are all over the map" as to what to do when a premature request for declaratory relief regarding the duty to indemnify is joined to a ripe request for declaratory relief regarding the duty to defend.   Pennsylvania Nat. Mut. Cas. Ins. Co. v. King, 2012 U.S. Dist. LEXIS 11228, at *19, 2012 WL 280656, at *5 (S.D. Ala. Jan. 30, 2012) (Steele, J.). "Some have ordered dismissal without prejudice, while others have

simply stayed the duty-to-indemnify issue pending further developments." Id.

In this Court, it appears that the preferred approach has been to retain jurisdiction to hear both the duty-to-defend and indemnification issues, but to stay consideration of the duty-to-indemnify issue until there is either a final disposition of the underlying action or at least a determination that there is no duty to defend. See Great W. Cas. Co. v. Firstfleet, Inc., 2013 U.S. Dist. LEXIS 115724, at *4, 2013 WL 4165719, at *2 (S.D. Ala. Aug. 15, 2013) (DuBose, C.J.) (staying plaintiff's duty-to-indemnify claims "until the earlier of (1) final disposition of the underlying state-court litigation; or (2) a ruling on the duty to defend, at which time the Court will entertain any motion that the parties may wish to file concerning the duty-to-indemnify claims"); Atl. Cas. Ins. Co. v. GMC Concrete, Inc., 2007 U.S. Dist. LEXIS 90428, at *25, 2007 WL 4335499, at *6 (S.D. Ala. Dec. 7, 2007) (Steele, J.) (same); King, 2012 U.S. Dist. LEXIS 11228, at *19-22, 2012 WL 280656, at *5 (same); Am. Nat'l Prop. & Cas. Co. v. Gulf Coast Aerial, LLC, 2019 U.S. Dist. LEXIS 164866, at *1, 2019 WL 4725160, at *1 (S.D. Ala. Sept. 26, 2019) (DuBose, C.J.) (staying plaintiff's duty-to-indemnify claim at least until the duty-to-defend issue is determined).[10]    Accordingly, the

_____

[10] Some district court judges in Alabama have disagreed with this approach based on the proposition "that a stay of an unripe claim

undersigned recommends that the Court follow the approach outlined above and stay consideration of the issue of MedPro's duty to indemnify the Craftons, while proceeding to determine the duty-to-defend and rescission claims.[11]

IV.   **RESCISSION**

Defendants further argue that MedPro has failed to state a claim upon which relief may be granted for rescission of the

_____

over which the court lacks jurisdiction is impermissible." See Nationwide Mut. Ins. Co. v. Barrow, 2019 U.S. Dist. LEXIS 160337, at *4, 2019 WL 4572913, at *2 (N.D. Ala. Sept. 20, 2019); see also GTR, Inc., 461 F. Supp. 3d at 1197 (dismissing insurer's unripe claim for declaratory relief as to its duty to indemnify even after determining that insurer owed no duty to defend in the pending underlying action, because "this Court lacks subject matter jurisdiction" over an unripe claim); Penn-Star Ins. Co. v. Swords, 2017 U.S. Dist. LEXIS 153751, at *17-19, 2017 WL 4180889, at *8-9 (N.D. Ala. Sept. 21, 2017). However, this Court has found that, while "an insurer's duty-to-indemnify declaratory judgment claim is not ripe until a final judgment has been entered against the insured, . . . such unripeness does not deprive a federal court of subject matter jurisdiction over that claim for lack of a 'case or controversy' under Article III of the U.S. Constitution." Am. Nat'l Prop. & Cas. Co. v. Gulf Coast Aerial, LLC, 2019 U.S. Dist. LEXIS 148531, at *8, 2019 WL 4131107, at *4 (S.D. Ala. Aug. 29, 2019) (Nelson, M.J.), report and recommendation adopted, 2019 U.S. Dist. LEXIS 164866, 2019 WL 4725160 (S.D. Ala. Sept. 26, 2019) (DuBose, C.J.).

[11]  Given this recommendation, the Court need not address Defendants' other argument as to why a dismissal or stay of MedPro's duty-to-indemnify declaratory judgment claim is warranted. See Gulf Coast Aerial, 2019 U.S. Dist. LEXIS 148531, at *16-17, 2019 WL 4131107, at *7 ("Because the Court can clearly abstain from hearing American National's duty-to-indemnify claim under prudential ripeness considerations, . . . the undersigned finds it unnecessary to address whether the Court should alternatively abstain from hearing that claim under Brillhart-Wilton considerations.").

Policy.   (Doc. 29 at 18).   According to Defendants, MedPro's declaratory judgment claim for rescission fails because the Healthcare Professional Professional Liability Insurance Application ("Application") attached as an exhibit to MedPro's complaint reveals no misrepresentation by the Craftons, and even if MedPro's complaint does show a misrepresentation, it does not allege that the misrepresentation satisfied any ground for rescission set forth in the Alabama rescission statute.   (Doc. 29 at 17-18; Doc. 38 at 6-11).

MedPro counters that its complaint states a plausible claim for rescission because the complaint alleges that the Application prompted the Craftons to disclose other specialties, but the Craftons only represented that Crafton Chiropractic employed one chiropractor to perform chiropractic services and did not disclose that they were providing cancer treatments "through the 'separate and distinct' Health Patient Program at the core of the [Underlying] Lawsuit."  (Doc. 35 at 10-11).

The Alabama rescission statute, Alabama Code § 27-14-7, provides in pertinent part:

> (a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties.   Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

17

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7(a) (1975).

Thus, "Alabama statutory law provides three alternative grounds for rescission.[12] An insurer can rescind a policy or deny coverage if, in the application or 'in negotiations therefor,' the insured made misstatements that either (1) were fraudulent, (i.e., made intentionally with knowledge); *or*, (2) were material to the risk (although innocently made); *or* (3) affected the insurer's good faith decision to issue the policy for which the insured applied." In re HealthSouth Corp., 308 F. Supp. 2d 1253, 1269-70 (N.D. Ala. 2004) (emphasis in original). "As a general rule, to which exceptions arise, the provisions of § 27-14-7 become a part of insurance policies issued in Alabama." Id. at 1270. An insurer

---

[12] "Although often referred to as the 'rescission statute,' § 27-14-7 does not mention rescission. Instead, the statute speaks of 'prevent[ing] a recovery under the policy.' Thus, the grounds for rescission discussed here can also apply to deny coverage under a valid contract of insurance." HealthSouth Corp., 308 F. Supp. 2d at 1270 n.26.

cannot include grounds for rescission in its policy that would provide it greater protection than is permitted by the Alabama rescission statute. Id. "An insurer, however, can by its policy terms, *contractually limit* the grounds for rescission to a standard that allows more protection for the insured than those provided in the statute, thereby waiving one or more of the statutory grounds." Id. (emphasis in original).

"All that is needed to trigger § 27-14-7(a) is for the insurer to show (i) that there was a misrepresentation in the insured's application, and (ii) that such misrepresentation was a material contributing influence that induced the insurer to issue the policy." Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of N.Y., 600 F. Supp. 2d 1228, 1240 (S.D. Ala. 2009).[13] "The question of whether a particular fact is or is not *material* is almost invariably a question for the jury, which is entitled to consider the factual context in which the determination is to be made."

---

[13]   Materiality is defined by Couch on Insurance as when:

> "If the fact concealed would have shown the liability of the insurer for the loss to be greater than appeared upon the facts disclosed, and would, in consequence, have induced a rational underwriter, governed by principles presumed to govern prudent and intelligent underwriters in practice, to have rejected the risk or accepted it only at an increased premium, the fact is material."

Auto-Owners Ins. Co. v. Thomas, 2007 WL 9717535, at *8 (S.D. Ala. Mar. 16, 2007) (quoting 9 Couch on Insurance § 38:27 (2d ed. 1962) (Supp. 1983)).

Id. at 1242 (emphasis in original) (quoting First Fin. Ins. Co. v. Tillery, 626 So. 2d 1252, 1255 (Ala. 1993)); see also Bennett v. Mut. of Omaha Ins. Co., 976 F.2d 659, 661 (11th Cir. 1992) (stating that "the materiality of a misrepresentation is generally a jury question" and noting Alabama courts' reluctance to remove the materiality issue from the province of the jury); Clark v. Ala. Farm Bureau Mut. Cas. Ins. Co., 465 So. 2d 1135, 1139 (Ala. Civ. App. 1984) ("In Alabama, the issue of whether a particular fact increases the risk of loss assumed by an insurance company is generally one for the jury.").

In its complaint, MedPro cites the following provisions from the Representations section of the Policy:

> By acceptance of this Policy, each Insured agrees the statements in any application and attachments submitted to the **Company** are true and correct. . . . Therefore, it is understood and agreed that, to the extent permitted by law, the **Company** reserves the right to rescind this Policy, or any coverage provided herein, for any material misrepresentation made by any Insured or its agent.

> The representations made by each Insured in the applications and attachments are the basis for the coverage provided, as well as the **Company's** calculation of the applicable premium.  As a result, each insured agrees to inform the **Company** of any changes to his or her practice.  Such material changes shall include, but are not limited to:

> 1.  A specialty, procedure performed, or training;

> . . . .

> It is understood and agreed that the statements made in any Insured's application are incorporated into, and

> shall form a part of, this Policy. Therefore, this Policy, any endorsements attached thereto, and the applications embody all agreements between all Insureds and the **Company**, or any of its authorized representatives, relating to this insurance.

(See Doc. 1 at 9-10; Doc. 1-4 at 16-17).

After highlighting those provisions, MedPro's complaint alleges:

> 47. MedPro issued the Policy based on the Crafton Defendants' representations in MedPro's Healthcare Professional Liability Insurance Application (the Application). Included in the Application is a Chiropractic Supplemental Application form that requested additional information regarding the Crafton Defendants' chiropractic business.
>
> 48. MedPro specifically requested the number of persons providing certain types of specialty services on behalf of the Crafton Defendants. The Chiropractic Supplemental Application states that a single person performs "chiropractor" services at the Crafton Defendants' office. The Crafton Defendants *did not* disclose any other specialties that are performed by the Crafton Defendants or any of their employees, including but not limited to "Dietician/Nutritionist," "Physician, MD/DO," and/or "Other." (emphasis added)
>
> 49. Both the Underlying Lawsuit and the Crafton Defendants' website indicate that the Crafton Defendants' Health Patient Program in which Patty Johnson enrolled is "kept distinct from the professional business" of the Crafton Defendants' chiropractic practice.
>
> 50. Pursuant to both the Policy and Alabama Code § 27-14-7, MedPro is entitled to rescind the Policy and to disclaim coverage for the Underlying Lawsuit to the extent the Crafton Defendants made material misrepresentations and/or omissions in the Application and/or failed to inform MedPro of any changes to their practice as required by the Representations section of the Policy.

(Doc. 1 at 10).

The Craftons contend that they made no misrepresentation in the Application because, when prompted to indicate the number the number of persons in their practice who provided services in certain listed specialties,[14] they correctly answered that the number of chiropractors who provide services in their practice was "1" - Dr. Crafton.  (Doc. 38 at 7).  However, in its complaint, MedPro alleges that the Application asked chiropractic applicants to indicate the number of persons providing certain types of specialty services and contained an area to disclose those specialties, including one labeled "Other (List Specialty):", yet the Craftons failed to disclose any specialty other than chiropractor, even though they were allegedly operating a Health

---

[14] The Chiropractic Supplemental Application states: "I.a. **General Information**: Chiropractic applicants must complete the following additional general information questions.  **A. Please indicate the number of each of the following who provide services in your office (please include yourself.**"  Directly below, thirteen types of services are listed under the heading "Specialty", namely: "Chiropractor", "Dietician/Nutritionist", "Chiropractic Assistant/Technician", "Acupuncturist", "Acupuncturist Technician", "Message [sic] Therapist", "Physician, MD/DO (List Specialty):", "Occupational Therapist", "Occupational Therapist Aide/Asst.", "Physical Therapist", "Physical Therapist Aide/Asst.", "X-Ray Technician", and "Other (List Specialty):". For each of the thirteen listed specialties, the application requests the following information: "Number Who Provide Services in your Practice", "Number Requesting Shared Limit", "Number Requesting Separate Limits", and "Are All Licensed or Certified?" Next to the "Chiropractor" specialty, the Craftons listed "1" under "Number Who Provide Services in Your Practice" and "1" under "Number Requesting Separate Limits".  The Craftons left the boxes next to all other specialties blank.  (See Doc. 1-5 at 9).

Patient Program that provided cancer treatments and was kept separate and distinct from their chiropractic practice. (See Doc. 1 at 10; Doc. 1-5 at 9). Contrary to Defendants' suggestion (see Doc. 38 at 6-8), the Application itself does not reveal that the Craftons made no material misrepresentations and thus contradict MedPro's allegations. Therefore, MedPro has plausibly alleged a misrepresentation or omission in the Application. See Mega Life & Health Ins. Co. v. Pieniozek, 585 F.3d 1399, 1405 (11th Cir. 2009) (stating that the issue of whether there was a misrepresentation supporting rescission was a question of fact).

Defendants also contend that MedPro fails to state a claim for policy rescission because it does not sufficiently allege that the claimed misrepresentation satisfies any ground for rescission under § 27-14-7(a). (Doc. 29 at 18). Specifically, Defendants argue that MedPro's "complaint does not allege that the specific misrepresentation claimed was in actual fact '[m]aterial either to the acceptance of the risk or to the hazard assumed by' MedPro (§ 27-14-7(a)(2)), or that but for the specific misrepresentation claimed, MedPro in actual fact 'in good faith . . . would not have issued a policy . . . at the premium rate as applied for' (§ 27-14-7(a)(3))." (Id. (underlines in original); see also Doc. 38 at 9-10).[15]

---

[15] In their reply brief, Defendants present additional arguments in support of their motion to dismiss MedPro's rescission claim

However, Defendants cite no authority requiring such direct and specific pleading of the grounds for rescission or the materiality of a misrepresentation.   In its complaint, MedPro

---

that were not raised or developed in the motion itself. Specifically, Defendants argue for the first time that the Application was ambiguous as to the meaning of "Specialty"; that the Application requires a *knowing and intentional* misrepresentation as grounds for rescission; and that "knowledge and belief" language in the "Notices and Agreements" section of the Application also heightens the standard for rescission above that provided by § 27-14-7(a)(2) and (3), so that MedPro cannot rescind based on an innocent misrepresentation. (See Doc. 38 at 9, 11-16).  However, "as [the Eleventh Circuit] repeatedly ha[s] admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'"  Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994)); see also Wetherbee v. S. Co., 423 F. App'x 933, 934 (11th Cir. 2011) (per curiam) ("[A]lthough Wetherbee briefed these issues in detail in his reply brief, we do not consider arguments raised for the first time in a reply brief."); In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.  BOA must not be allowed to embellish an argument in a reply brief when it failed to fully raise and address the issue in its initial brief.") (internal citations omitted); Flamenbaum v. Orient Lines, Inc., 2004 U.S. Dist. LEXIS 14718, at *46, 2004 WL 1773207, at *14 (S.D. Fla. July 20, 2004) (declining to consider argument raised for first time in reply brief in support of motion to dismiss because plaintiffs had not had an opportunity to respond); King v. Clarke Cnty., Ala., 2012 U.S. Dist. LEXIS 153578, at *21-24, 2012 WL 5287040, at *7 (S.D. Ala. Sept. 27, 2012) (denying motion to dismiss plaintiff's claim when defendant abandoned the sole basis asserted in its motion to dismiss for dismissal of that claim in favor of new arguments allegedly warranting dismissal, because "this Court cannot consider arguments raised for the first time in a reply brief"), report and recommendation adopted, 2012 U.S. Dist. LEXIS 153580, 2012 WL 5265954 (S.D. Ala. Oct. 24, 2012).  Therefore, the Court will not address Defendants' freshly raised arguments that the Application was ambiguous as to the meaning of "Specialty", and that the Application requires a knowing and/or intentional misrepresentation in order to permit rescission.

highlights Policy provisions which state that "[t]he representations made by each Insured in the applications and attachments are the basis for the coverage provided, as well as the Company's calculation of the applicable premium[,]" and indicating that "material changes" to an insured's practice include a "specialty[.]" (See Doc. 1 at 9; Doc. 1-4 at 16). The complaint also includes allegations that "MedPro issued the Policy based on the Crafton Defendants' representations" in the Application, wherein the Craftons disclosed no specialties other than chiropractor despite being asked on the Chiropractic Supplemental Application to "indicate the number of each of the following who provide services in your office (please include yourself)" and allegedly operating a separate and distinct program that provided cancer treatment and was not part of their traditional chiropractic practice. (Doc. 1 at 10; see Doc. 1-5 at 9).

At a minimum, MedPro's allegations plausibly suggest that the Craftons' alleged misrepresentation or omission with respect to the Health Patient Program was "material either to the acceptance of the risk or to the hazard assumed by" MedPro under § 27-14-7(a)(2), or that MedPro "in good faith would either not have issued the policy . . . or would not have issued a policy . . . at the premium rate as applied for . . . if the true facts had been made known to [MedPro] as required either by the application for the

policy . . . or otherwise" under § 27-14-7(a)(3).  See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1207 (11th Cir. 2018) ("To state a claim, a complaint must include allegations *plausibly suggesting* (not merely consistent with) the plaintiff's entitlement to relief.") (emphasis added) (citations and internal quotation marks omitted); Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (stating that a complaint should "contain either direct *or inferential* allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (emphasis added) (quotation omitted).  In the context of this case and the Underlying Lawsuit, MedPro's complaint states a plausible claim for relief for rescission of the Policy.  Consequently, Defendants' motion to dismiss MedPro's declaratory claim for policy rescission for failure to state a claim is due to be denied.

## V.   DUTY TO DEFEND

Defendants also seek dismissal of MedPro's claim for a declaratory judgment that it has no duty to defend the Craftons in the Underlying Lawsuit.  (Doc. 29 at 8).  Defendants contend that a comparison of the Policy language and the allegations in the Underlying Lawsuit reveals that the Policy affords coverage for at least some of the Johnsons' claims, and that MedPro therefore has a duty to defend those claims.  Specifically, Defendants argue that MedPro owes a duty to defend the Johnsons' "Alternative Claim

under the Alabama Medical Liability Act" (Count H) - which was added to the Underlying Lawsuit after the filing of MedPro's complaint in this case - because that claim is within the scope of the Policy's Professional Liability coverage and none of the exclusions cited in MedPro's complaint bar coverage.  (Id. at 9). Defendants also assert that the Johnsons' claims for reckless misrepresentation, negligent misrepresentation, fraudulent suppression, breach of contract, breach of warranty, and wrongful death (Counts B through G) fall within the Policy's Healthcare Professional Premises Liability coverage[16] and are not barred by any of the cited exclusions.  (Id. at 10-16).

However, even if the Court were to find that the Policy provides coverage for some or all of these claims, Defendants would not be entitled to judgment on the issue of MedPro's duty to defend at this juncture.  As discussed previously, § 27-14-7 permits an "insurance company to contractually require the applicant to tell the truth upon penalty of a voidance of the contract."  State Farm

---

[16] MedPro's complaint does not specifically reference the Policy's Healthcare Professional Premises Liability coverage, except to state in a footnote that the coverage does "not appear to be relevant to this lawsuit."  (See Doc. 1 at 5 n.14) ("The Policy contains seven other Insuring Agreements [including that for 'Healthcare Professional Premises Liability'] that do not appear to be relevant to this lawsuit.  MedPro reserves all rights under those Insuring Agreements to the extent the Crafton Defendants seek coverage under those provisions.").  MedPro's brief in response to the instant motion also does not address Defendants' arguments regarding Healthcare Professional Premises Liability coverage.  (See Doc. 35).

Gen. Ins. Co. v. Oliver, 658 F. Supp. 1546, 1549-50 (N.D. Ala. 1987), aff'd sub nom. State Farm Fire & Cas. Co. v. Oliver, 854 F.2d 416 (11th Cir. 1988); Clark, 465 So. 2d at 1139 (noting that "an intentional misrepresentation of material facts relied upon by the insurer permits the insurer to void the policy" and that an incorrect statement made innocently "that was material to acceptance of the risk, or would have caused [the insurer] in good faith not to have issued the policy as it did" would have allowed the insurer to deny the claim and void the policy).  Because MedPro has stated a plausible rescission claim that could potentially void the Policy and result in the duty-to-defend issue being decided in MedPro's favor, it would be premature to grant Defendants' motion for judgment on the pleadings as to MedPro's duty to defend based on their coverage arguments alone.

Accordingly, the undersigned recommends that the Court deny Defendants' motion to dismiss MedPro's duty-to-defend claim, without prejudice to their arguments regarding coverage under the Policy.  See Hudson Specialty Ins. Co. v. Talex Enters., LLC, 2020 U.S. Dist. LEXIS 15415, at *9, 2020 WL 495561, at *3 (S.D. Miss. Jan. 30, 2020) ("Inasmuch as the issue of rescinding the subject Policies due to material misrepresentations made in the application of the Policies, is still before the Court, it would be inappropriate to grant summary judgment to McComb on the issue of Hudson's duty to defend under the Policies."); Ironwood Country

Club v. Liberty Ins. Underwriters, Inc., 2014 U.S. Dist. LEXIS
190440, at *9, 2014 WL 12558790, at *3 (C.D. Cal. Mar. 24, 2014)
("Here, the Court's concern is . . . that it is inappropriate to
decide whether there is a duty to defend under the Policy before
deciding whether the Policy itself is void. Accordingly, the Court
DENIES without prejudice Plaintiff's Motion as to the issue of
Defendant's duty to defend."); Rocklin Park Place Condos. Owners
Ass'n v. Liberty Ins. Underwriters, Inc., 2013 U.S. Dist. LEXIS
127669, at *12, 2013 WL 4828154, at *4 (E.D. Cal. Sept. 6, 2013)
("[B]ecause Defendant's rescission defense could potentially void
the policy, this is not the proper juncture for summary
adjudication of [the duty to defend]."); Toll Bros. v. Essex Ins.
Co., 2015 U.S. Dist. LEXIS 55855, at *14-15, 2015 WL 1933699, at
*5-6 (E.D. Pa. Apr. 29, 2015) (stating that it "logically follows"
that insurer had no duty to defend because rescission of the
policies "abrogated this duty," and vacating prior order granting
partial summary judgment to insured on duty-to-defend claim and
entering summary judgment in favor of insurer on that claim); cf.
Maryland Cas. Co. v. Malone, 90 F. Supp. 3d 1351, 1363 (N.D. Ga.
2015) ("Because the court finds that Malone made material
misrepresentations in the insurance application, the court grants
Maryland Casualty's motion for summary judgment as to rescission.
The court need not consider the parties' arguments as to
coverage.").

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, the undersigned recommends that Defendants' motion to dismiss or stay (Doc. 29) be **GRANTED in part** and **DENIED in part**, as follows:

- The motion should be **GRANTED** as to a stay of MedPro's duty-to-indemnify claim, until further order of the Court.

- To the extent it seeks dismissal of MedPro's declaratory judgment claim for policy rescission based on failure to state a claim upon which relief may be granted, the motion should be **DENIED**.

- To the extent it seeks dismissal of MedPro's duty-to-defend claim based on failure to state a claim upon which relief may be granted, the motion should be **DENIED** without prejudice to Defendants' arguments regarding coverage.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the

provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **25th** day of **March, 2021.**

                              /s/ SONJA F. BIVINS
                    UNITED STATES MAGISTRATE JUDGE