**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THE MEDICAL PROTECTIVE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 20-00414-KD-B** |
| | ) | |
| **CRAFTON CHIROPRACTIC, INC.,** | ) | |
| **KATHERINE CRAFTON,** | ) | |
| **DOUG JOHNSON, and** | ) | |
| **EMILY JOHNSON as Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **Patricia Johnson,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This declaratory judgment action is before the Court on the motion for summary judgment filed by Plaintiff The Medical Protective Company ("MedPro") and memorandum in support, Defendants Crafton Chiropractic, Inc. and Katherine Crafton (collectively the "Craftons") response, and MedPro's reply (docs. 50, 51, 60, 62) and the motion for summary judgment filed by the Craftons and memorandum in support, MedPro's response, and the Craftons' reply (docs. 52, 53, 54, 61, 64). Upon consideration, and for the reasons set forth herein,

> MedPro's motion for summary judgment as to rescission based on the Craftons' alleged misrepresentations in the Policy Application and on failure to inform MedPro of changes in the Craftons' practice is DENIED;

> The Craftons' motion for summary judgment as to rescission based on the Craftons' alleged misrepresentations in the Policy Application is GRANTED;

> The Crafton's motion for summary judgment as to rescission based on failure to inform MedPro of changes in the Craftons' practice is GRANTED;

The Craftons' motion for summary judgment that MedPro owes the Craftons a defense to the Johnsons' claims is GRANTED; and

The Craftons' motion for summary judgment based on the argument that the Healthcare Professional Premises Liability coverage alternatively applies to the Johnsons' breach of contract, breach of warranty, and wrongful death claims and therefore, MedPro owes a duty to defend the Craftons is DENIED.

## I. <u>Procedural history</u>[1]

Defendant Doug Johnson's wife Patricia died from breast cancer in May 2018.  In January 2019, he filed a civil action against the Craftons in the Circuit Court of Mobile County, Alabama based on treatment Patricia received at Crafton Chiropractic, Inc.  In May 2020, the complaint was amended to add plaintiff Emily Johnson, as personal representative for the estate of Patricia Johnson (doc. 1-3).  The complaint was amended two additional times (docs. 29-1, 29-2).

Crafton Chiropractic, Inc. had a "HealthCare Professional Professional Liability Policy" (*sic*) No. 815125 with MedPro during the relevant period of time that Patricia received treatment at the clinic (doc. 1-4, p. 5).  MedPro has defended the Craftons in the underlying action, subject to a reservation of rights (doc. 1, p. 3).

In August 2020, MedPro filed its complaint seeking a declaratory judgment regarding the parties' rights and obligations with respect to the Policy (doc. 1).  MedPro claims that the Policy "does not afford coverage for the underlying lawsuit because the Crafton Defendants cannot satisfy the definition of professional services" (doc. 1, p. 5).  MedPro also claims that material

---

[1] The parties do not dispute that the Court has jurisdiction based on 28 U.S.C. § 1332, that venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391, and that Alabama law applies (doc. 39, p. 10-11).

misrepresentations and omissions allegedly made by the Craftons (i.e., that no specialties other than chiropractic services were offered at the clinic), "further limit coverage under the Policy" and that under the Policy terms and Ala. Code § 27-14-7, it is entitled to rescind the Policy and disclaim coverage for the underlying lawsuit (Id., p. 9-10).

MedPro seeks a declaration that the Craftons "were not performing 'professional services' in their treatment" of Patricia; that the listed exclusions "exclude and/or limit" coverage for the claims asserted by the Johnsons; and that "if material misrepresentations and omissions were made in the Application and/or if the Crafton Defendants failed to 'inform [MedPro] of any change to [their] practice' then MedPro is entitled to a declaration of no coverage" (Id., p. 11). MedPro also seeks a declaration of permission to withdraw from defending the Craftons in the underlying lawsuit (Id.).

MedPro and the Craftons filed cross-motions for summary judgment, which are now before the Court.

## II. Factual findings[2]

### A. The Application

The 2016 "Healthcare Professional Professional Liability Insurance Application" (*sic*) identifies the Applicant as "Crafton Chiropractic, Inc." a "Professional Corporation: sole shareholder" (doc. 1-5, p. 1). Katherine Crafton identified herself as a "Doctor of Chiropractic", identified her "Specialty" as "Chiropractor", and that she was the 100% shareholder of Crafton

---

[2] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

Chiropractic, Inc. (Id., p. 3).   The Application also includes a Chiropractic Supplemental Application (Id., p. 9). The Supplemental Application requests "the number" of service providers in the practice who provide services in certain "Specialty" areas. Specifically, Chiropractor, Dietician/Nutritionist, Chiropractic Assistant/Technician, Acupuncturist, Acupuncturist Technician, Message (*sic*) Therapist, Physician MD/DO, Occupational Therapist, Occupational Therapist Aide/Asst., Physical Therapist, Physical Therapist Aide/Asst., X-Ray Technician, and "Other (List Specialty)" (Id.)  Crafton identified one service provider in her practice with a specialty of Chiropractor (Id.).

Crafton states that Crafton Chiropractic "did not in December 2016 [when the Application was completed] and has not since then employed any dietician or nutritionist" (doc. 52-1, Crafton Affidavit).  Crafton also states that

> My education and training as a chiropractor, like the education and training of chiropractors in general, included diet and nutrition and advising patients regarding these matters but I do not have any separate license, certificate, or degree as a dietician or nutritionist.  I provide diet-and-nutrition advice and recommendations to patients as a chiropractor and in the course of practice as a chiropractor.

(Doc. 52-1).

Crafton also averred that in December 2016, when the Application was completed, Crafton Chiropractic did not employ any physician, whether a medical doctor or doctor of osteopathic medicine, or "anyone within the vague description 'Other (List Specialty)'" (Id.). Crafton further states that Crafton Chiropractic's only other employees were part-time aides who work at the front desk, direct the movement of patients from check-in to check-out, etc., and that Alabama law does not require aides to be licensed, certified or degreed to perform the work that the aides performed (Id.). Crafton states that "not stating any number for employees employed as

4

a 'Dietician/Nutritionist.' 'Physician MD/DO (List Specialty),' or 'Other (List Specialty,' was truthful to the best of Crafton's knowledge and belief and did not knowingly or intentionally misrepresent or conceal information." (Id.).

Section VIII, captioned Notices and Agreements, states that a signature represents the applicant's agreement that the representations on the Application are "full and complete to the best of our combined knowledge and belief." (doc. 1-5, p. 6.)  Section VIII provides that the Application and any Attachments "shall be the basis of the contract "with MedPro and an agreement to notify MedPro "if there are any future material changes in any answer to this application, or its Attachments, including without limitation, any change in professional specialty . . ." (Id.)

Section VIII also provides:

**I understand that any material misrepresentation or omission made by me or any other applicant on this application may act to render any contract of insurance null and void and without effect or provide the Company the right to rescind it. . . .**

(Id., emphasis in original).

And, also provides:

I AGREE THAT IF I, OR ANY APPLICANT, FAIL TO COMPLY WITH THESE TERMS WE WILL HAVE NO COVERAGE FOR ANY CLAIM UNDER ANY POLICY OF INSURANCE FOR WHICH WE ARE APPLYING.

(Id., capitalization, and emphasis in original).

### B. The Policy

MedPro issued "HealthCare Professional Professional Liability" (*sic*) Policy No. 815125 to Crafton Chiropractic, Inc. for the period of December 10, 2018 to December 10, 2019 (doc. 1-4). The Policy provides coverage on a claims-made basis, i.e., for claims made during the policy

period.  The Policy has a retroactive date of December 10, 2014 (Id., p. 4). The Policy provides

coverage up to $1,000,000 for each covered "wrongful act, event or personal injury offense."

(Id., p. 3).  The Policy defines a "wrongful act" as "any actual or alleged negligent act, error or

omission in the performance of professional services as a Healthcare Professional" and

"professional services" include "medical treatment for those specialties listed on the

Declarations", specifically, "Chiropractor." (Id., p. 21-22).

The named insureds were Katherine B. Crafton and Crafton Chiropractic, Inc.  The

Policy was issued to a "Renewal Business" (Id.).  The Policy provided limits of insurance for "A.

Professional Liability, B. Healthcare Professional Premises Liability, C. Personal Injury

Liability, and D. Good Samaritan Acts" (Id., p. 3, 5-6).

The Professional Liability Insuring Agreement of the Policy affords coverage for "those

amounts an Insured is legally obligated to pay to compensate others for damages resulting from

an Insured's wrongful act in the rendering of, or failure to render, professional services as a

Healthcare Professional that results in injury" (Id., § I.A).  The Policy defines "professional

services" as:

> Medical treatment for those specialties listed on the Declarations or any other
> services listed, by endorsement, for which an Insured is licensed as required by
> law, trained, and qualified to perform in the Insured's capacity as a Healthcare
> Professional.

(Id., § XII.X). The Declarations Page contains a "Professional Services Specialty" section, which

states "See Schedule of Insureds." (Id., p. 3). In the "Schedule of Insureds Endorsement" the

named insureds are Crafton and Crafton Chiropractic and the only "Professional Services

Specialty" indicated by Crafton was "Chiropractor" (Id., p. 4).

Section IX of the Policy prescribes "Conditions" necessary to obtain coverage. Condition

I sets forth the procedures for making changes to the Policy (Id., § IX.I.), as follows:

1. This Policy, including endorsements, applications and attachments, contains all the agreements between you and us concerning this insurance.

2. The First Named Insured designated on the Declarations is authorized to request or accept changes in this Policy on behalf of all Insured.  This Policy can only be changed by a written Endorsement we issue and make a part of this Policy.

3. The First Named Insured shall act as the agent of all Insureds with respect to any notice provided under this Policy including, but not limited to, notices of cancellation or nonrenewal, endorsements issued to form a part of this Policy, premiums due, return premiums, and settlements.  The First Named Insured shall also notify us and all Insureds of any changes which might affect the insurance provided under this Policy.

(Id.)

Condition P addresses "Representations." With respect to rescission, the Policy provides:

By acceptance of this Policy, each Insured agrees the statements in any application and attachments submitted to the Company are true and correct.  . . . Therefore, it is understood and agreed that, to the extent permitted by law, the Company reserves the right to rescind this Policy, or any coverage provided herein, for any material misrepresentation made by any Insured or its agent.

(Id. § IX.P).

The Policy also provides, in relevant part:

The representations made by each Insured in the applications and attachments are the basis for the coverage provided, as well as the Company's calculation of the applicable premium. As a result, each Insured agrees to inform the Company of any changes to his or her practice. Such material changes shall include, but are not limited to: 1. A specialty, procedure performed or training. . . ."

(Id.)  Also, in § IX.P, if MedPro is "made aware of a material change in an Insured's practice"

MedPro "reserves the right to recalculate the applicable premium and/or exclude the new

practice characteristics from coverage." (Id.)

The Policy also provides "Healthcare Professional Premises Liability" coverage for injury arising out of an "event" other than rendering or failing to render professional services (Id. § I.B.). Specifically, in relevant part,

> We shall pay those amounts an Insured is legally obligated to pay to compensate patients for damages resulting from bodily injury or property damage arising out of an event on premises you principally use in your professional services as a Healthcare Professional.

(Id., p. 5). Under the Policy, an "event" is defined as follows:

> L. Event means an accident, including continuous or repeated exposure to substantially the same conditions, resulting in bodily injury or property damage unexpected and unintended from the standpoint of the Insured. Event does not include the rendering of, or failure to, render any professional services, nor does it include defamation.

(Id., p. 20).

### C. Renewal and non-renewal of the Policy

The relevant Policy period was December 10, 2018 to December 10, 2019 (doc. 1-4). After the Johnsons' lawsuit was filed in January 2019, MedPro renewed the Policy for another year, December 10, 2019 to December 10, 2020, on the same terms and for the same premium (doc. 52-6; doc. 1-4). MedPro accepted the Craftons' payments for renewal of the policy.

In October 2020, MedPro sent the Craftons a letter advising that MedPro would not renew the Policy expiring December 10, 2020 (doc. 52-6). MedPro's letter stated, "The reason for non-renewal of your coverage is due to concerns related to open MedPro Group claim 1072669," i.e., the Johnson action (Id.).

### D. The reservation of rights letters

Crafton sent the Johnsons complaint to MedPro on January 25, 2019 (doc. 52-6, p. 73-75). MedPro then sent a reservation-of-rights letter to Crafton dated February 19, 2019 (Id., p.

139-149).  MedPro determined that the Johnsons' claims did not allege any conduct that came within the scope of coverage in the Policy for either Professional Liability or Premises Liability (Id., p. 145-148). This determination was based on the Johnsons' primary claim that Crafton provided alleged cancer treatments to Patricia at the clinic and misrepresented to Patricia that these treatments could cure her.  MedPro contends that the Policy does not cover the cancer treatments that Crafton allegedly provided to Patricia.

MedPro also reserved the right to rescind the Policy based on Crafton's misrepresentation in the Application that only Chiropractic services were provided.  Specifically, MedPro points to the Policy Application which indicated that one person performs chiropractic services "and no other person provides any other type of service," and compares that to the Johnsons' claim of cancer treatments and the Crafton Chiropractic website which indicated additional services through a Health Patient Program. (Id., p. 149).

### E. The underlying state court lawsuit

The substantive facts alleged in the amended complaints remain largely unchanged from the original complaint (doc. 1-3, First Amended Complaint); (doc. 29-2, Second Amended Complaint); (doc. 29-1, Third Amended Complaint).  The Johnsons allege as follows: In November 2017, Patricia was diagnosed with a recurrence of breast cancer.  She discussed her prognosis and treatment with an oncologist and researched other treatment options, including alternative therapies. In late 2017, Patricia's research led her to Crafton Chiropractic. She and her husband met with Katherine Crafton to discuss treatment in Crafton Chiropractic's Health Patient Program.  Crafton made certain representations as to her cancer treatment protocol and her success in treating cancer.  In early 2018, Patricia began treatment in the Health Patient

Program. Patricia's cancer worsened during treatment, even though Crafton represented that the treatment was working.  Patricia died from breast cancer in May 2018.

As to the chiropractic and Health Patient Program, the Johnsons allege that the Craftons "market[] two distinct lines of services[:] . . . traditional chiropractic care . . . [and] 'alternative natural health activities' or [the] 'Health Patient Program'" (doc. 29-1, p. 2-3) and that the Health Patient Program is separate and distinct from the professional chiropractic practice (Id., p. 3). They allege that according to the Craftons' website, the Program is a " 'non-governed' health activity", that the " 'health activities can be offered totally outside any profession' ", and " 'administered by nonprofessionals because the activities require no specialized education'" (Id.).

In their Third Amended Complaint, the Johnsons assert eight causes of action against the Craftons: Intentional misrepresentation (Count A); reckless misrepresentation (Count B); negligent misrepresentation (Count C); fraudulent suppression (Count D); breach of contract (Count E); breach of warranty (Count F); wrongful death (Count G); and an "Alternative Claim under the Alabama Medical Liability Act" (Count H) (doc. 29-1, p. 8-13).  In Count H, the Johnsons allege that the Craftons "negligently departed from the standard of care applicable to a chiropractor" by intentionally, recklessly, negligently, or wantonly misrepresenting that they could cure Patricia's cancer, and by "suppressing" that they could not cure the cancer (doc. 29-1, p. 12-13).  The Craftons denied the Johnsons' allegations (doc. 52-8, answer)

**F. The Craftons' treatment of Patricia Johnson**

In her affidavit, Crafton states that Patricia Johnson complained of "shoulder pain, restricted shoulder movements, and neck pain" and that she "received spinal and extremity manipulation and adjustment, and muscular therapy, from Crafton" (doc. 52-1).  Crafton also states that Johnson also received Chiropractic Physiological Therapeutics as defined in Alabama

Administrative Code R. 190-X-3-.02 and that Crafton, as a licensed chiropractor was qualified to practice these Therapies (Id.).  "Chiropractic Physiological Therapeutics includes but is not limited to modalities which produce electrical current, light, air, water, thermal (hot and cold), percussion, vibration, traction, massage, sonic wave, colonic irrigation, and rehabilitation equipment (bracing and casting)." Ala. Admin. Code R. 190X-3-.02 (doc. 52-3). Crafton also states that her "practice in December 2016 and at all times since then included spinal and extremity manipulation and adjustment, muscular therapy, Chiropractic Physiological Therapeutics, and providing diet-and-nutritional advice and recommendations and nutritional supplements." (Id.).[3]

Crafton recommended and Patricia received nutritional supplements from Crafton (doc. 52-6, p. 87-88).  Crafton testified that Patricia received therapies associated with the Health Patient Program and that a person "cannot be in the health program" if they "are not a chiropractic patient" (doc. 52-9, p. 9-10).  At deposition, Crafton testified as to the Therapeutics that Patricia received, which included several of the Chiropractic Physiological Therapeutics identified in the Alabama Administrative Code: "Jade therapy. . . it's just a very mild light frequency"; "mild hyperbaric therapy is used to deliver oxygen more efficiently into the cells under a light pressure"; "Harmonizer … a waistband that's connected to the unit.  It just raises the voltage of the cells"; "infrared sauna" detox; and "ionic detox" footbaths (doc. 52-9, p. 10-14).  Crafton's treatment notes and "To Whom it May Concern" letter indicate that Patricia received thirteen "modified chiropractic visits" during the relevant time frame, in addition to supplements and the therapeutic modalities (doc. 52-6, p. 87-103).

---

[3] The parties do not dispute that Crafton had the necessary hours of study and board certification to include these therapeutic modalities in her practice (doc. 60, p. 4).

### III. <u>Standard of review</u>

"Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Williamson v. Brevard County, Fla.,</u> 928 F.3d 1296, 1304 (11th Cir. 2019) (citing Fed. R. Civ. P. 56(a)). "The movant bears the burden of presenting pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any that establish the absence of any genuine, material factual dispute." <u>Id.</u> (citing <u>Procaps S.A. v. Patheon, Inc.</u>, 845 F.3d 1072, 1079 (11th Cir. 2016) (citations and quotations omitted)). The district courts are "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." <u>Feliciano v. City of Miami Beach</u>, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

If the non-movant bears the burden of proof at trial on the dispositive issue, the movant may meet its burden by pointing out the insufficiency of the evidence with respect to an essential element of the non-movant's claims. <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986). The burden then shifts to the non-movant who must set out specific facts, supported by the evidence, to show that a genuine issue exists. <u>Celotex</u>, 477 U.S. at 324. Thus, if the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. <u>Celotex</u>, 477 U.S. at 323.

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. <u>See, e.g., Am. Bankers Ins. Group v. United States</u>, 408 F.3d 1328, 1331 (11th Cir. 2005); <u>Gerling Global Reins. Corp. of Am. v. Gallagher</u>, 267 F.3d 1228, 1233 (11th Cir. 2001). "Cross-motions.... will not, in themselves, warrant the court in granting summary

judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed..." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted).  In reviewing cross-motions for summary judgment, the Court should "draw all inferences and review all evidence in the light most favorable to the nonmoving party." Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale, 901 F.3d 1235, 1239–40 (11th Cir. 2018) (citation omitted).

### IV.   MedPro's and the Craftons' cross-motions for summary judgment as to MedPro's claim for rescission based on misrepresentation and/or changes to the chiropractic specialty

#### A. Statement of the law

The Alabama rescission statute, Alabama Code § 27-14-7, provides in pertinent part:

(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7(a) (1975).

Thus, "Alabama statutory law provides three alternative grounds for rescission.[4] An insurer can rescind a policy or deny coverage if, in the application or 'in negotiations therefor,' the insured made misstatements that either (1) were fraudulent, (i.e., made intentionally with knowledge); *or*, (2) were material to the risk (although innocently made); *or* (3) affected the insurer's good faith decision to issue the policy for which the insured applied." In re HealthSouth Corp., 308 F. Supp. 2d 1253, 1269–70 (N.D. Ala. 2004) (emphasis in original). "As a general rule, to which exceptions arise, the provisions of § 27-14-7 become a part of insurance policies issued in Alabama." Id. at 1270. An insurer cannot include grounds for rescission in its policy that would provide it greater protection than is permitted by the Alabama rescission statute. Id. "An insurer, however, can by its policy terms, *contractually limit* the grounds for rescission to a standard that allows more protection for the insured than those provided in the statute, thereby waiving one or more of the statutory grounds." Id. (emphasis in original).

"All that is needed to trigger § 27-14-7(a) is for the insurer to show (i) that there was a misrepresentation in the insured's application, and (ii) that such misrepresentation was a material contributing influence that induced the insurer to issue the policy." Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of N.Y., 600 F. Supp. 2d 1228, 1240 (S.D. Ala. 2009). However, an "applicant is not answerable for an omission to mention the existence of other facts about which no inquiry is made"; an insurer "cannot claim a concealment where no inquiry was made as to such matter"; and courts have "been hesitant to find misrepresentation when information was not directly solicited." Allstate Ins., Co. v. Shirah, 466 So. 2d 940, 944 (Ala. 1985) (citations

---

[4] "Although often referred to as the 'rescission statute,' § 27–14–7 does not mention rescission. Instead, the statute speaks of 'prevent[ing] a recovery under the policy.' Thus, the grounds for rescission discussed here can also apply to deny coverage under a valid contract of insurance." HealthSouth Corp., 308 F. Supp. 2d at 1270 n. 26.

omitted).  " 'The materiality of a misrepresentation on a policy application is generally a jury question.' " <u>Am. Gen. Life Ins. Co. v. Pike</u>, 2020 WL 6273736, at *3 (N.D. Ala. Oct. 26, 2020) (quoting <u>Alfa Life Ins. Corp. v. Lewis</u>, 910 So. 2d 757, 762 (Ala. 2005)).  "However, '[i]f the facts as to materiality are undisputed, then the question need not be submitted to the jury.'" <u>Am. Gen. Life Ins. Co. v. Pike</u>, 2020 WL 6273736, at *3 (N.D. Ala. Oct. 26, 2020) (quoting <u>Richerzhagen v. Nat'l Home Life Assur. Co. of New York</u>, 523 So. 2d 344, 347 (Ala. 1988).

### B. <u>Misrepresentation</u>

MedPro argues rescission based on misrepresentation is appropriate pursuant to § 27-14-7 of the Code of Alabama. (Doc. 51 at 7); (Doc. 61 at 9); (Doc. 62 at 1). MedPro asserts the Craftons materially misrepresented their true business practices by not fully disclosing all rendered professional services or specialties, most notably the "Health Patient Program" and allegedly offering cancer treatment. (Doc. 51 at 8-9); (Doc. 61 at 8-10); (Doc. 62 at 2, 4). MedPro further asserts Crafton's participation in non-professional treatment MedPro was unaware of would have prevented their issuance of insurance coverage to Crafton. (Doc. 51 at 9-10); (Doc. 61 at 11). Thus, MedPro argues Crafton's alleged material misrepresentations through lack of disclosure, entitle MedPro to rescind the issued Chiropractic Healthcare Professional Professional Liability Policy. (Id.). MedPro moves the Court to grant its motion for summary judgment and declare that the Policy is rescinded and void ab initio.

The Craftons contend they answered the insurance application truthfully and therefore recission based on misrepresentation should be denied to MedPro. (Doc. 54 at 11, 14); (Doc. 60 at 8-10); (Doc. 64 at 11-12). Additionally, the Craftons assert "MedPro cannot complain about alleged nondisclosure of information that MedPro's application did not request." (Doc. 54 at 19); (Doc. 60 at 9-10). The Craftons further argue MedPro's renewal of coverage after learning of the

underlying lawsuit implies the information allegedly not disclosed in the application could not

have been material, which would preclude rescission since material misrepresentation is

required. (Doc. 54 at 11-13); (Doc. 60 at 7); (Doc. 64 at 11).

In support of its misrepresentation argument, MedPro relies upon a section of the

"Chiropractic Supplemental Application" which indicates that as "General Information"…

"Chiropractic applicants must complete the following additional general information questions"

(doc. 1-5, p. 9). Specifically, the question: "A. Please indicate the number of each of the

following who provides services in your office (please include yourself)" (Id.).  The Craftons

answered one service provider for the specialty of chiropractor and left blank the other sections.

MedPro asserts that it relied on this representation – that only chiropractic services were

provided - and would not have issued the Policy to the Craftons if it had known Crafton was

providing cancer treatment.

To support MedPro's conclusion of fact that the Craftons provided cancer treatment,

MedPro relies on the allegations in the Johnsons' complaints. Specifically, MedPro relies on

Johnson's allegations that Crafton treated Patricia for cancer through the Health Patient Program.

Medpro then points to the Craftons' website[5] for the proposition that the Program was separate

and distinct from the chiropractic practice because the "health activities can be offered totally

outside any profession" and "administered by nonprofessionals."  But the website also indicates

that the Program can be administered by professionals as "a separate part" of [the] Chiropractic

treatment...."  (Doc. 52-6, p. 70).  And in this case, the only evidence before the Court indicates

that Crafton provided the health treatment in her capacity as a Chiropractor and as part of the

chiropractic treatment of Patricia.  Crafton provides a sworn affidavit wherein she states that she

---

[5] See doc. 52-6, p. 70-72.

did not treat Patricia for cancer, and that Patricia received chiropractic treatment which included other modalities allowed under the Alabama Administrative Code; specifically, diet, nutritional, and therapeutic modalities. The Craftons also provided copies of Crafton's treatment records and To Whom it may Concern letters which indicate that Patricia received chiropractic treatment which included health and nutrition advice and products.  MedPro has failed to provide any evidence to rebut Crafton's affidavit.  Instead, MedPro relies on the allegations in the state court complaints for its conclusion that Crafton misrepresented her practice on the application and was providing cancer treatments.

Also, MedPro must show that its Application raised specific questions and that the Craftons answered the questions falsely, by either misrepresentation or suppression of the information requested.  Allstate Ins., Co. v. Shirah, 466 So. 2d at 944.  MedPro argues that the "Application makes specific inquiry into the specialty or professional services Dr. Crafton provides" (doc. 51, p. 9).  The Craftons aver that they did not and do not employ any service providers in the remaining specialty areas listed in the question or any "Other" specialty.  The Craftons aver, and MedPro does not rebut this evidence, that Crafton's education and training as a chiropractor included diet and nutrition, and that she provides diet-and-nutrition advice and recommendations to patients as a chiropractor (doc. 52-1).

Additionally, the Crafton's cannot be faulted for failing to list the Health Patient Program under "other" specialty.  The request is too vague if MedPro's intent was to elicit the modalities of Chiropractic services that would be provided.  See Southern Ins. Co. of Virginia v. Mark's Foundations, Inc., No. 2:09-CV-00069-WCO, 2010 WL 11601709, at *10 (N.D. Ga. Sept. 9, 2010) (finding that "Plaintiff simply cannot allege misrepresentations on the basis of answers to vague and imprecise questions.").  Also, the Application is considered as part of the Policy and

any ambiguities therein construed in favor of the Insured. See Atlanta Cas. Co. v. Russell, 798 So. 2d 664, 667 (Ala. 2001) ("Section 27–14–17, Ala. Code 1975, states, 'Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application which is a part of the policy.' Thus, the insurance application is to be construed as a part of the policy itself."); 6 Couch on Ins. § 81:42 ("The language of a question in an application for insurance is to be read in its plain, ordinary, and natural signification, and if there is any ambiguity, the ambiguity is to be resolved against the insurer, who framed the question, and in favor of the applicant. Consequently, if the insured in good faith answers questions that are ambiguous, doubtful, or obscure, the representations will be construed in his or her favor and against the insurer.  If a question in an application is vague and ambiguous, a reasonable interpretation of that question by the applicant may be of controlling effect, and legal fraud may not be predicated upon an honest response based upon this reasonable interpretation, or at the least, a jury question is raised as to the reasonableness of the insured's interpretation."); Mut. Ben. Health & Acc. Ass'n of Omaha v. Reid, 279 Ala. 136, 144, 182 So. 2d 869, 876 (1966) ("If there is any ambiguity in a policy of insurance, and here that included the application for it, it is the fault of the insurance company. If the language used is susceptible to two interpretations, the one will be adopted most favorable to the insured.").

Accordingly, summary judgment is granted in favor of the Craftons and denied as to MedPro on the issue of rescission of the Policy based on misrepresentation.

### C.  Changes to the chiropractic specialty

MedPro argues that the Policy obligates the Craftons to notify MedPro of any changes or additions to their chiropractic specialty or professional health services, and that failure to notify

is a basis for rescission (Doc. 51 at 9); (Doc. 61 at 8-10).  MedPro argues that the Craftons indicated in the Application that the only professional service provided was chiropractic treatment and that after the Application was submitted, the Craftons did not notify MedPro that Crafton was providing treatment through the Health Patient Program and that Crafton was treating Patricia for cancer.

The Craftons aver that their practice in December 2016 and since then, never changed. As a result, they did not have an obligation to notify MedPro of any changes (doc. 54 at 19-20) (doc. 60).  The Craftons argue that the Health Patient Program contained the Chiropractic Physiological Therapeutics as defined in the Alabama Administrative Code and the dietary and nutritional counseling and recommendations, nutritional supplements and hygiene (detoxification) as allowed by statute and therefore, these services were part of Crafton's chiropractic practice (doc. 60 at 5, 10). They also point out that the description of the Health Patient Program on the website did not contain any reference to a cancer protocol and that Crafton never treated Patricia for cancer.  The Craftons argue that the only evidence that MedPro submits regarding the alleged change in practice is the allegations in the state court complaints.

The Court agrees: MedPro relies solely on the Johnsons' allegations. MedPro has not provided any evidence that the Health Patient Program was a change in chiropractic practice or that Crafton treated Patricia for cancer.

To the contrary, the Craftons provide administrative and statutory evidence that the services provided in the Program were consistent with certain types of chiropractic treatment recognized under Alabama law. Thus, Crafton's deposition testimony – that she did not tell Patricia or her family that she could treat and cure cancer, nor did she provide cancer treatments– (doc. 52-9, p 7), as well as Crafton's affidavit are unrebutted. Specifically, Crafton's sworn

statement that Patricia was treated with Chiropractic Physiological Therapeutics, spinal and

extremity manipulation and adjustment and muscular therapy for her complaints of shoulder

pain, neck pain, and restricted shoulder movement (doc. 52-1).  And Crafton's sworn statement

that her practice in December 2016, and since then, includes chiropractic manipulation and

therapy, Chiropractic Physiological Therapeutics, and diet, nutrition and supplement advice and

recommendations, which she is board certified and licensed to practice and provide under

Alabama law (Id.).

Accordingly, summary judgment is granted in favor of the Craftons and denied as to

MedPro's claim for rescission based on failure to notify as to a change in practice.[6]


### V. __Duty to defend__

Under Alabama law, MedPro's duty to defend is broader than its duty to indemnify.

Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So. 2d 1006, 1009 (Ala. 2005). " The

duty to defend is determined by the injured party's allegations against the insured, whereas an

insurer's duty to indemnify is determined by the insured's actual conduct." Owners Ins. Co. v.

GTR, Inc., 461 F. Supp. 3d 1190, 1194-1195 (M.D. Ala. 2020) (citing Tanner v. State Farm Fire

& Cas. Co., 874 So. 2d 1058, 1064 (Ala. 2003)).   Also, under Alabama law, the insureds – the

Craftons – have the burden to establish coverage by showing that a claim potentially falls within

the policy. Owners Ins. Co., 461 F. Supp. 3d at 1194-1195 (citing Twin City Fire Ins. Co. v. Alfa

Mut. Ins. Co., 817 So. 2d 687, 697 (Ala. 2001); Colonial Life & Accident Ins. Co. v. Collins,

280 Ala. 373, 194 So. 2d 532, 535 (1967); Am. Safety Indem. Co. v. T.H. Taylor, Inc., 513 F.

App'x 807, 813-14 (11th Cir. 2013)).  "Though an insurer's duty to defend is primarily

---

[6] The Craftons' remaining arguments as to rescission are moot.

determined based on the facts alleged in the injured party's complaint against the insured, the Court is 'not limited to the bare allegations of the complaint' and 'may look to the facts which may be proved by admissible evidence.'" <u>Owners Ins. Co.</u>, 461 F. Supp. 3d at 1195 (citing <u>Hartford Cas. Ins. Co.</u>, 928 So. 2d at 1010. "That is, where the complaint against the insured 'does not, on its face, allege a covered accident or occurrence, "other facts which did exist but were not alleged could be taken into consideration" to establish coverage because the policy should be liberally construed in favor of the insured.' " <u>Id</u>.

The Craftons argue that MedPro has a duty to provide the Craftons with a defense in the underlying state court action because the claims in the Johnsons' third amended complaint fall within the Professional Liability coverage (doc. 54, p. 23-26). The Craftons argue that the claims under the Alabama Medical Liability Act and claims for intentional, negligent and reckless misrepresentation; suppression; breach of contract and warranty; and wrongful death, all seek "damages resulting from" the Craftons' alleged "wrongful act in the rendering of, or failure to render, professional services as a Healthcare Professional" (Id.).  The Craftons point out that the Policy states that MedPro "ha[s] the right and duty to defend…any suit brought against" the Craftons "for a covered claim", and therefore, MedPro owes the Craftons a defense. (Id.).

MedPro asserts that it does not owe a defense because the Craftons' treatment of Patricia for cancer is not a covered event or occurrence under the Policy, since the Policy does not provide Professional Liability coverage for cancer treatment.  MedPro relies on the fact that the Johnsons' complaint presents no factual allegations as to chiropractic services.  Instead, the Johnsons' allegations are premised on the fact that Crafton treated Patricia for cancer through the Health Patient Program.  MedPro argues that whether Crafton provided chiropractic treatment is irrelevant because the Johnsons' claims do not result from chiropractic treatment.  In sum,

MedPro asserts that the Policy does not cover the damages claimed in the Third Amended Complaint, including the claim under the AMLA, because the damages were not alleged to be caused by chiropractic professional services (doc. 61, p. 20-22).

However, the Court may consider "other facts which did exist but were not alleged" in the complaint to establish coverage, and thus a duty to defend. Owners Ins. Co., 461 F. Supp. 3d at 1195 (citing Hartford Cas. Ins. Co., 928 So. 2d at 1010.  The Craftons provided Crafton's affidavit, deposition testimony, and treatment records which show that Crafton provided chiropractic treatment and Chiropractic Physiologic Therapeutics to Patricia.  Thus, these "other facts" in existence, which were not alleged in the third amended complaint, indicate that coverage is available for the Craftons because all treatment provided to Johnson was Chiropractic treatment rendered in her professional capacity as a Chiropractor.

Additionally, there is no question that MedPro has a duty to defend the alternative claim under the AMLA.  The allegations in the Third Amended Complaint clearly fall under the "coverage" for the "amounts [the Craftons are] legally obligated to pay as damages to compensate others for damages resulting from [the Craftons'] wrongful act in the rendering of, or failure to render, professional services as a Healthcare Professional that results in injury" (doc. 1-4, § I.A).  MedPro has the burden to show that a Policy exclusion applies.  However, it has not made any argument in that regard in its motion for summary judgment or in response to Craftons' motion for summary judgment. Acceptance Ins. Co. v. Brown, 832 So. 2d 1, 12 (Ala. 2001) ("[T]he insurer bears the burden of proving the applicability of any policy exclusion.").  Moreover, "[e]xclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company

that drafted and issued the policy." Cincinnati Ins. Co. v. Lee Anesthesia, P.C., 641 So. 2d 247, 249 (Ala. 1994).

The Policy defines a covered "wrongful act" as "any actual or alleged negligent act, error or omission in the performance of professional services as a Healthcare Professional" (doc. 1-4, p. 21-22).  The Johnsons have alleged misrepresentations (that were intentional, reckless, or at least negligent), suppression, breach of contract and warranty. The Johnsons couch these allegations as not falling under the AMLA.  However, the "form of the action is not the decisive test in actions against physicians, surgeons and dentists for malpractice.  The decisive test is the substance of the action." Sellers v. Edwards, 289 Ala. 2, 265 So. 2d 438, 440 (1972).  And "[c]laims alleging misrepresentations made during the course of a doctor-patient relationship are claims of malpractice and are governed by the AMLA." Ex parte Sonnier, 707 So. 2d 635, 638 (Ala. 1997).  The facts of the underlying state court action are similar to those alleged in Benefield v. E. Hood Craddock Clinic, 456 So. 2d 52, 54 (Ala. 1984) where "the fraudulent misrepresentations which Benefield alleges her doctors made occurred, if at all, during the course of her treatment by her physicians.  They were inextricably a part of the [ ] doctor-patient consultations . . .  Not only were the allegedly fraudulent communications part and parcel of the doctor/patient relationship, but they also related solely to Benefield's medical condition."

**The state court will ultimately decide whether and which claims fall under the AMLA.** However, for purposes of the duty to defend, MedPro is obligated to defend any claims asserted in the Third Amended Complaint (doc. 29-1) whether brought pursuant to the AMLA or based on other legal theories. Accordingly, summary judgment is granted in favor of the Craftons as to MedPro's duty to defend.

### VI. <u>Premises Liability</u>

The Craftons point out that the Johnsons' complaint alleges that Patricia received cancer treatment through the Health Patient Program which did not involve any professional services and that her treatment took place at the clinic (doc. 54, p. 26-30). Based thereon, the Craftons argue that to the extent, if any, the Johnsons' breach of contract, breach of warranty, and wrongful death claims are not covered under the "Healthcare Professional Professional Liability" (*sic*) coverage, these claims are covered under the "Healthcare Professional Premises Liability", and therefore, MedPro has the duty to defend (doc. 54, p. 26).

The Craftons argue that the Johnsons' breach of contract and breach of warranty claims seek recovery for damages that "Crafton did not or expect to intend and which was therefore an accident" and thus an "event" as defined in the Policy. The Craftons also argue that to the extent the Johnsons' "wrongful-death claim is based on Crafton's reckless or negligent (innocent) misrepresentation and suppression" or on breach of contract or breach of warranty, this claim also alleges an "event" as defined in the Policy.

Section I(A) of the Policy (Doc. 1-4 at 5) states that the Premises Liability Policy covers "events" that result in bodily injuries on the premises. <u>Id</u>.  In the definition section, "event" is defined as "an accident, including continuous or repeated exposure to substantially the same conditions, resulting in bodily injury or property damage unexpected and unintended from the standpoint of the Insured." Id.  Importantly "[e]vent does not include the rendering of, or failure to, render any professional services, nor does it include defamation." (Id.).

As previously determined (for purposes of the duty to defend), Crafton rendered or failed to render professional services as a chiropractor.  Accordingly, the Craftons motion for summary judgment that MedPro owes a defense under the Premises Liability Policy is denied.

**VII. <u>Conclusion</u>**

For the reasons set forth herein,

MedPro's motion for summary judgment as to rescission based on the Craftons' alleged misrepresentations in the Policy Application and on failure to inform MedPro of changes in the Craftons' practice is DENIED;

The Craftons' motion for summary judgment as to rescission based on the Craftons' alleged misrepresentations in the Policy Application is GRANTED;

The Crafton's motion for summary judgment as to rescission based on failure to inform MedPro of changes in the Craftons' practice is GRANTED;

The Craftons' motion for summary judgment that MedPro owes the Craftons a defense to the Johnsons' claims is GRANTED; and

The Craftons' motion for summary judgment based on the argument that the Healthcare Professional Premises Liability coverage alternatively applies to the Johnsons' breach of contract, breach of warranty, and wrongful death claims and therefore, MedPro owes a duty to defend the Craftons is DENIED.

DONE and ORDERED this 1st day of November 2021.

<u>s/ Kristi K. DuBose</u>
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE